UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| RYAN GRANT, | |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | |
| JAMES DYMENT, BRIAN KOSHAK, LARRY LONGLEY, BERNARD MAHONEY, ALAN RICHARDS, STEVEN STEWART, and THE CITY OF SEATTLE, | |
| Defendants. | |

## I.  INTRODUCTION

1.1  Defendant Seattle Police officers arrested Ryan Grant on November 28, 2014, during a public protest in Downtown Seattle that arose in response to the announcement of the grand jury verdict in the case of Michael Brown in Ferguson, Missouri, one of several high-profile police shootings that drew nationwide attention to the disproportionately high number of African-Americans killed by law enforcement.  At the time of his arrest, Mr. Grant was protesting peacefully amid a group of other protesters whose path SPD bicycle officers blocked at the corner of Pine Street and Boren Avenue, under the SPD directive that the protest not be allowed to proceed into the public forum of Seattle's downtown commercial district.  As Mr. Grant stood pinned between the crowd of protesters and the impromptu bicycle barricade—holding a sign that read "Am I next?"—a phalanx of officers charged the crowd repeatedly with their bikes, striking the people in front violently, including Mr. Grant.  With protesters pressing

COMPLAINT FOR DAMAGES - 1

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

him from behind, Mr. Grant held up his hands in a compliant posture, then outstretched them to his sides in an effort to push the crowd back from the police advances. He did not push or kick any of the officers; yet the officers jabbed Mr. Grant and other protesters with riot batons. The officers also detonated loud "blast balls" that dispersed pepper spray and escalated tensions. A bystander video captured the officers' aggressive tactics and the defensive response of Mr. Grant.

1.2     On the order of Defendant Sgt. James Dyment, Defendants Larry Longley and Alan Richards grabbed Mr. Grant, one of the few African Americans in the predominantly white crowd, pulled him through the police line, threw him to the ground, and handcuffed him. Defendants Brian Koshak, Bernard Mahoney, and Steven Stewart assisted in arresting Mr. Grant for felony assault of a police officer, resisting arrest, and obstruction.  Mr. Granted was booked and spent the night in jail. To justify the arrest, the officers concocted the story that Mr. Grant "pushed" SPD officers "several times," including Defendants Longley and Richards. The officers supported their story with false and misleading written statements submitted to their superior officers, and ultimately to the prosecutor, recommending that Mr. Grant be prosecuted. The prosecutor relied on these reports and moved forward with the prosecution of Mr. Grant.

1.3     Defendants arrested Mr. Grant in retaliation for exercising his First Amendment rights, and without probable cause. The officers were acting under the directive to stop the Mr. Grant's protected First Amendment activity as the otherwise peaceful protest moved to enter downtown and commingle with holiday shoppers. Worse yet, the officers singled out Mr. Grant as an African-American, indeed as he displayed his "Am I next?" sign that is emblematic of the Black Lives Matter movement decrying police brutality. In fact, Officer Longley, who had a history of racism and excessive force, used his riot baton to deliberately knock this sign out of Mr. Grant's hands in the moments before the arrest.

1.4     Over the course of the next fourteen months as the criminal case proceeded to trial, the SPD withheld its Office of Professional Accountability (OPA) investigative files that contained Officer Longley's history of bias, despite a standing motion for such criminal

COMPLAINT FOR DAMAGES - 2

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

discovery, until the court compelled production of the records on the eve of trial.  The SPD similarly withheld the obviously exculpatory bystander video, again despite the discovery motion and the constitutional duty to provide such evidence favorable to the defense.  This evidence, too, was not produced until the court's order.  After viewing the video and hearing officer testimony replete with contradictions, a jury acquitted Mr. Grant.

1.5	Mr. Grant brings this complaint for damages for violations of his First and Fourth Amendment rights, as well as a state law claim for outrage, because of Defendants' targeting him for retaliation and malicious prosecution.

## II.	PARTIES

2.1	Plaintiff Ryan Grant is a resident of Pierce County, Washington.

2.2	Defendant James Dyment is a police officer employed by the City of Seattle.  Defendant Dyment was working under color of law and within the course and scope of his employment at all relevant times herein.

2.3	Defendant Brian Koshak is a police officer employed by the City of Seattle.  Defendant Koshak was working under color of law and within the course and scope of his employment at all relevant times herein.

2.4	Defendant Larry Longley is a police officer employed by the City of Seattle.  Defendant Longley was working under color of law and within the course and scope of his employment at all relevant times herein.

2.5	Defendant Bernard Mahoney is a police officer employed by the City of Seattle.  Defendant Mahoney was working under color of law and within the course and scope of his employment at all relevant times herein.

2.6	Defendant Alan Richards is a police officer employed by the City of Seattle.  Defendant Richards was working under color of law and within the course and scope of his employment at all relevant times herein.

COMPLAINT FOR DAMAGES - 3

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

2.7     Defendant Steven Stewart is a police officer employed by the City of Seattle. Defendant Stewart was working under color of law and within the course and scope of his employment at all relevant times herein.

2.8     Defendant City of Seattle is a municipality within the State of Washington and employed the individual Defendants and other police officers who responded to the public protest of the Michael Brown grand jury verdict on November 28, 2014.

### III.     JURISDICTION

3.1     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.2     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Western District of Washington.

### IV.     FACTUAL ALLEGATIONS

4.1     On November 28, 2014, Plaintiff Ryan Grant participated in a protest in Seattle against the grand jury verdict in the Michael Brown police shooting case in Ferguson, Missouri.

4.2     The protest was against police brutality committed against African American communities, organized as part of the larger Black Lives Matter movement.

4.3     In preparing for the protest, the Seattle Police Department (SPD) explicitly acknowledged the reaction to the announcement of the grand jury verdict in Ferguson as the purpose of the protest and developed a strategic plan to contain it.

4.4     Mr. Grant marched with a group of protesters that met at Seattle University, proceeded from there along Broadway Avenue, and turned left down Pike Street.  It was a peaceful protest, without violence or property destruction.  As they went, there were SPD officers present along that route, on bikes and otherwise.  Until Mr. Grant's group of protesters reached the corner of Pike Street and Boren Avenue, SPD officers allowed the protest to continue without interference.

COMPLAINT FOR DAMAGES - 4

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

4.5     Mr. Grant is unmistakably an African-American man. On the day of the protest, he was wearing a red and black ski jacket. He was not wearing any kind of head covering or mask, and made no other attempts to conceal his appearance or identity. Though it was a rainy day, Mr. Grant carried no umbrella as some of the other protesters did.

4.6     For the duration of his participation in the protest, until shortly before his arrest, Mr. Grant held up a sign that stated: "Am I next?" He also chanted related political statements. Aside from the sign, Mr. Grant carried nothing in his hands.

4.7     As Mr. Grant and the other protesters reached the corner of Pike Street and Boren Avenue, Defendants and other SPD police officers formed a blockade. Coordinated in part by Defendant Sgt. James Dyment, SPD bike officers picked up their bikes perpendicular to their bodies and, standing roughly shoulder to shoulder, created what they called a "mobile fence line." The SPD officers did this under a directive to block the protesters' movement into the public areas around Westlake Center in downtown Seattle where a holiday tree lighting ceremony was set to begin. At the time the officers formed their "mobile fence line" across Pike, the protesters were peaceful as they had been since the beginning of the march.

4.8     Using this "mobile fence line" technique, the officers halted the progress of the march, blocking both the street and sidewalk, and then began to back the group into a corner so that they were surrounded by physical barriers or police officers. The officers' stated intent was to prevent the protesters from moving along their route and crossing into downtown.

4.9     As the group of 100-150 protesters met the phalanx of officers, some protesters moved toward the corner of Pine Street and Boren Avenue. Mr. Grant found himself near the front of this group of protesters.

4.10    At Pine and Boren, SPD officers formed another "mobile fence line" with their bikes, with a second group of officers behind and amid them referred to as "linebackers." Defendant Dyment was a supervisor, and Defendants Koshak, Mahoney, Longley, Richards, and Stewart were among the "linebackers" behind the row of bike officers.

COMPLAINT FOR DAMAGES - 5

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

4.11     In the first row of protesters, Mr. Grant, still holding his "Am I next?" sign, was caught between the line of officers and the group of protesters who continued to amass behind him.

4.12     From this position, Mr. Grant yelled loudly in an attempt to convince other protesters to not push into the police officers.

4.13     As he did this, the line of bike officers picked up their bikes, again held perpendicular to their bodies, and made repeated advances into Mr. Grant and the other protesters alongside him.  Mr. Grant held his hands in the air in a non-threatening manner as the police continued to push the fence line into him and the other protesters near the front.

4.14     No officer instructed Mr. Grant or others to disburse, with a warning that they would be arrested if they did not.  They shouted only "Move back!"

4.15     After several forceful pushes into the group of protesters, SPD officers under Defendant Dyment's supervision deployed "blast balls," which are explosive devices that contain an oleoresin capsicum (OC) irritant, also known as pepper spray.  The officers deployed two of these blast balls near Mr. Grant, which caused disorder as the concussive sound startled the protesters and the OC irritant made it difficult to see.   Other protesters near Mr. Grant held up umbrellas as the OC cloud wafted up and the police officers moved toward them.  A few officers began pulling umbrellas from the protesters' hands.  They did this, despite testimony later at trial that it was reasonable that protesters might have umbrellas because it was a rainy day.

4.16     After a few seconds, the SPD officers resumed their mobile fence line, again pushing back into the crowd, striking Mr. Grant and the other protesters with their bicycles as before, causing some of them to fall down.

4.17     The officers performed this crowd control technique still under the directive to block the protesters from entering downtown.

4.18     Defendant Richards was among the police officers advancing the fence line into the protesters.  As he did, he became involved in an altercation with protesters holding umbrellas.  Mr. Grant was not one of these protesters.

COMPLAINT FOR DAMAGES - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

4.19    Defendant Longley also engaged in physical altercations with protesters and attempted to pull or knock umbrellas out of protesters' hands. He stood near Defendant Richards as he did this. Despite the obvious rainy weather, Defendant Longley used his riot baton to knock these umbrellas away.

4.20    During roughly the same time frame, Defendant Longley lunged at Mr. Grant with his riot baton, punctured the "Am I next?" sign, and knocked it to the ground. Mr. Grant put his hands up in the air, in a gesture used widely during Black Lives Matter protests to signify "Hands Up, Don't Shoot."

4.21    Pinned between the line of bicycle officers and the pressure of the crowd behind him, Mr. Grant extended his hands out to the side and backwards in an effort to hold back the protesters and create some space between himself and the officers who continued to push forward with their bicycles, as was captured by a bystander video.

4.22    In the midst of the officers' assault on the protesters, Defendant Sgt. Dyment ordered Defendants Longley and Richards to grab Mr. Grant. In his police report, Officer Richards wrote: "I was still assisting in maintain the line when Sgt. Dyment instructed me to take custody of a B/M [black male]," which he later identified as Mr. Grant.

4.23    At no time during the blockade at Pine and Boren (or before then) did Mr. Grant push, shove, kick, or otherwise go past the bike line or make affirmative contact with the officers, including Defendants Richards or Longley. The only contact between Mr. Grant and the officers was when they forcefully pushed their bicycles into the crowd.

4.24    Mr. Grant was not involved in any altercations, did not have an umbrella, and did not attempt to prevent any police officers from contacting or otherwise dealing with any protesters. Mr. Grant, dressed in his red and black ski jacket and without hat or mask, clearly did not resemble any blackclad "anarchist" that SPD vilified as potential violent protesters.

4.25    There were very few other African-American protesters in the crowd, and Mr. Grant was the only African-American protester in the immediate vicinity of the individual Defendants at the time Sgt. Dyment ordered the arrest of Mr. Grant.

COMPLAINT FOR DAMAGES - 7

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

4.26    Defendants Richards and Longley pulled Mr. Grant out of the group of protesters and physically dragged him across the police line. Mr. Grant did not resist arrest, but said "Am I being arrested?" Defendants Richards and Longley threw him to the ground with unnecessary and excessive force. Defendants Koshak, Mahoney, and Stevens assisted in the arrest and handcuffing of Mr. Grant. After one of the officers yelled at him to "stop resisting!" Mr. Grant went "as limp as possible," as he later testified.

4.27    After Mr. Grant was arrested, the officers turned him over to transport officers to be taken into custody at a Seattle police station. After being booked, Mr. Grant was transported to the King County Jail where he spent the night.

4.28    Among the protesters near Mr. Grant, the officers claimed some were kicking and pushing officers, or holding the allegedly weaponized umbrellas; and some were allegedly dressed in black clothing associated with "anarchists." Although these other protesters were later described to be far more menacing than any conduct attributed to Mr. Grant, Defendants arrested the tall, visibly African American (Grant) who was caught between the larger group of protesters and the SPD mobile fence line, as he outstretched his hands outstretched in a non-aggressive posture.

4.29    The individual Defendants wrote statements, police reports, and use of force reports regarding the arrest of Mr. Grant.

4.30    Officer Longley made the false claim: "At one point I noticed a black male in his early 20's wearing a black and red coat got in front of me and began yelling obscenities directly at me and the bike officer next me," and that he was "trying to insight [sic] the crowd." Officer Longley also stated falsely: "[T]he black male in the black and red jacket began pushing at me and the bike officers. He attempted to push through our line by pushing me." In his report, Officer Longley admitted that he used his baton against the protesters, but omitted the material facts that Mr. Grant was holding the "Am I next?" sign and that he knocked it from his hands. In his report, Officer Longley went on to mention deployment of the blast balls and followed his false and misleading narrative with the statement: "At that point a supervisor in the back

COMPLAINT FOR DAMAGES - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

(Dyment) yell to arrest the black male in the red and black jacket," whom he later identified as Mr. Grant.

4.31    Officer Richards made the false claim: "As I as struggling over the umbrella [of a bystander] a black male wearing a red and black jacket [referring to Grant] hit my arms and shoved me. . . . The male pushed me several times.  I also observed him shoving officers to the left and right of me. . . .  A/Grant did not comply with orders and actively shoved me and fellow SPD officers."  Officer Richards followed this false description with the statement: "Sgt. Dyment verbally advised me that A/Grant needed to be arrested to be placed under arrest."

4.32    Defendant Officer Brian Koshak made the following false statement in support of the arrest: Mr. Grant "pushed Officer Longley and other officers . . . ."  He also stated falsely that Mr. Grant "continued to pull away and resist," after the officers attempted to arrest him.  Officer Koshak omitted the material fact that Mr. Grant's arms were outstretched as he tried to create space between the officers and protests.  He similarly omitted that Mr. Grant had nothing in his hands that could be used as any weapon, and that Officer Longley used his baton to knock Mr. Grant's "Am I next?" sign away.

4.33    Sgt. Dyment did not write any reports regarding Mr. Grant's arrest.  Later at Mr. Grant's criminal trial, Sgt. Dyment could not corroborate the observations of Officers Longley and Richards and testified:  "I just recall advising a couple officers to make arrests there . . . but I don't specifically recall Mr. Grant's arrest."

4.34    Officer Stewart omitted the material fact that Mr. Grant was not pushing at the officers or attempting to breach the bike line.  Officer Richards also made the false statement that Mr. Grant "continued to his attempt to break free from us," after the officers told him to stop resisting.

4.35    A few days after the November 28, 2014 protest and arrest of Mr. Grant, and after the officers had completed their reports, an SPD officer found on the internet a video of the protest and Mr. Grant's arrest and circulated the link among the participating officers, including one or more of the Defendants.  The video did not corroborate any of the material allegations of

COMPLAINT FOR DAMAGES - 9

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

criminal conduct made by Defendants.  Though there were gaps in the video, the existing segments showed Mr. Grant pinned between the bike line and the throng of protesters behind him, with his arms outstretched trying to push the protesters back.

4.36     Defendants lacked probable cause to arrest Mr. Grant.  They also arrested Mr. Grant out of retaliatory animus for exercising his First Amendment rights.  Worse yet, they explicitly focused on Mr. Grant's race as a "black male" and singled him out for arrest from the fellow protesters who, even by the officers' account, were purportedly engaged in much more threatening conduct than anything attributed to Mr. Grant.

4.37     The Seattle City Attorney's Office prosecuted Mr. Grant on charges of misdemeanor assault, obstruction and resisting arrest, relying on the false and misleading accounts of the individual Defendants.

4.38     During pre-trial discovery, the SPD withheld some evidence from both the City Attorney's Office and Mr. Grant's attorney for almost eight months.  This evidence included the video of the events leading up to Mr. Grant's arrest, and internal reports from SPD's Office of Professional Accountability (OPA) that contained complaints against the Defendants for racial bias and/or excessive force, some of which had resulted in thorough investigations into officer misconduct, civil suits, and official admonishments.

4.39     The SPD only produced that evidence the day before Mr. Grant's trial, despite the standing motion for criminal discovery and *Brady* material urged by Mr. Grant's criminal defense attorney.  The exculpatory evidence was provided only by court order.

4.40     The case proceeded to trial, on February 3, 2016, after Mr. Grant had endured for approximately fourteen months the stress and fear of an unjust conviction that potentially carried as many as 364 days in jail, the consequent loss of his job, and stigma associated with being suspected of a crime.

4.41     Defendants Koshak, Longley, Stewart, and Dyment testified.  Some of the testimony they gave contradicted their written accounts of the arrest.  The testifying officers also

COMPLAINT FOR DAMAGES - 10

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

1  could not identify any specific assaultive acts by Mr. Grant.  Sgt. Dyment could not articulate
2  why he ordered that Mr. Grant be arrested.

3      4.42    The jury viewed the video of the incident that the SPD failed to produce during
4  the eight months prior to trial, and heard testimony about the history of complaints against
5  Defendant Longley for racial bias and excessive force.

6      4.43    Mid-trial, the Assistant City Attorney was forced to drop the assault charge
7  because the officers could not testify convincingly that Mr. Grant had struck or pushed any of the
8  officers as the police reports had claimed.

9      4.44    After the parties rested, the jury acquitted Mr. Grant on the remaining charges.

## V.   CLAIMS

5.1  By virtue of the facts set forth above, the individual Defendants are liable for compensatory and punitive damages for deprivation of the civil rights of Plaintiff Ryan Grant guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable seizures and malicious prosecution.

5.2  By virtue of the facts set forth above, the individual Defendants are liable for compensatory and punitive damages for deprivation of the civil rights of Plaintiff Ryan Grant guaranteed by the Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, to be free from racial bias.

5.3  By virtue of the facts set forth above, the individual Defendants are liable for compensatory and punitive damages for deprivation of the civil rights of Plaintiff Ryan Grant guaranteed by the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from retaliatory arrest in response to protected expressive activity.

5.4  By virtue of the facts set forth above, Defendants are liable for compensatory damages for the tort of outrage.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

6.1  Compensatory damages;

COMPLAINT FOR DAMAGES - 11

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

kj261401

1    6.2    Punitive damages from the individual Defendants on Plaintiff's claims under 42 U.S.C. § 1983;

6.3    Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and to the extent otherwise permitted by law;

6.4    Such other relief as may be just and equitable.

DATED this 1st day of November, 2017.

MacDONALD HOAGUE & BAYLESS

By: s/*David Whedbee*
David Whedbee, WSBA #35977
davidw@mhb.com
Sam Kramer, WSBA #50132
samk@mhb.com
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES - 12